UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JS AMERICA, INC., a New Jersey corporation,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JINRO AMERICA, INC., a Washington corporation,<br><br>　　　　　Defendant. | CASE NO. C05-0466C<br><br>ORDER |

## I. INTRODUCTION

This matter has come before the Court on Defendant's motion to dismiss the amended complaint, or in the alternative, to stay the action pending the resolution of related proceedings in the South Korean judicial system. Having carefully considered the papers filed by the parties, the Court has determined that no oral argument shall be necessary. For the reasons that follow, the Court hereby GRANTS Defendant's motion.

## II. BACKGROUND

The following facts are undisputed. On September 1, 2002, Plaintiff JS America ("JSA") entered into a bilateral contract with Jinro Limited. Under the terms of this contract, JSA was to be the sole importer of Jinro products in the United States east of the Mississippi River (the "Territory"), covering

ORDER – 1

27 states. JSA was to use its best efforts to resell Jinro products to licensed distributors in the Territory. The term of the agreement is for five years, beginning on September 1, 2002, and is automatically renewable for an additional five years provided that JSA does not default in any way.

Prior to the formation of this contract, Jinro Limited's products were distributed in the United States through Defendant Jinro America, Inc. ("JAI"). The agreement between JSA and Jinro Limited had the effect of terminating JAI's right to distribute Jinro products in the eastern United States.

On May 14, 2003, Jinro Limited became the subject of an involuntary reorganization proceeding in the Seoul Central District Court. In November 2004, Jinro Limited ceased to fill JSA's orders for product (submitted in October 2004 and thereafter).

Plaintiff further alleges that sometime in late November 2004, JAI began to contact distributors in the Territory for the purpose of selling them Jinro products, despite knowing of the existence of the agreement between JSA and Jinro Limited.

Also in November 2004, the Receiver for Jinro Limited commenced an action in the Seoul District Court against JSA, among other things, to rescind the import agreement.

Defendant has now filed a motion to dismiss or stay on several alternative grounds: (1) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted; (2) pursuant to the *Colorado River* analysis of "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,'" *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976); and (3) pursuant to general reasons of sound judicial administration and international comity.

III.     ANALYSIS

   A.     *Federal Rule of Civil Procedure 12(b)(6)*

Fed. R. Civ. P. 12(b)(6) provides that an action will be dismissed for failure to state a claim upon which relief may be granted. A court will grant dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.*

ORDER – 2

*Gibson*, 355 U.S. 41, 45-46 (1957). While a court must accept all material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party, conclusory allegations of law or unwarranted inferences of fact urged by the nonmoving party are insufficient to defeat a motion to dismiss. *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001). A court's obligation to construe allegations in the light most favorable to the nonmoving party does not mean that those allegations must be construed in a light favorable to the nonmoving party, if such a construction cannot reasonably be made. A motion to dismiss must be decided in light of Rule 8(a)'s relaxed pleading requirements, under which a plaintiff need only make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2003).

In the case at bar, Plaintiff JSA brings this suit against Defendant JAI for tortious interference with JSA's contractual relations and business expectancies.[1] The law provides a cause of action for tortious interference with an existing contract *or* business expectancy. For a plaintiff to prevail on a claim for tortious interference, four basic elements (in Washington, courts sometimes organize the same basic elements into a five-prong analysis) must be shown to exist: 1) a valid contractual relationship or business expectancy; 2) knowledge by defendant(s) of that contract or expectancy; 3) intentional unjustifiable interference by defendant(s) not a party to the contract causing a breach of the relationship or expectancy; and 4) resultant damage to the party whose relationship or expectancy has been disrupted. *See, e.g.*, *Leingang v. Pierce County Med. Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997).

Here, Plaintiff JSA claims that JAI contacted distributors in JSA's exclusive territory and that this contact constituted tortious interference with JSA's contractual relations and business expectancies. JAI objects that Plaintiff fails to allege the existence of valid contracts with which JAI interfered. JAI also

---

[1] The parties are not in agreement as to whether California or Washington law should apply, but both parties agree that California and Washington law are substantially similar with respect to the elements of a tortious interference claim. In the absence of further briefing on this issue at this time, the Court will apply Washington law, except where specified.

ORDER – 3

objects that JSA did not have any remaining expectancy of selling Jinro products in the Territory because the alleged interference took place at around the same time that Jinro Limited stopped filling JSA's orders for product. Finally, JAI argues that JSA has failed to allege conduct sufficient to constitute the independently wrongful act required as an element of a prima facie case of tortious interference.

Plaintiff's amended complaint alleges that "Jinro America was aware of JSA's contractual relationship with both Jinro Limited and the distributors of Jinro Products in the Territory." (Am. Compl. ¶ 9; Dkt. No. 40.) The complaint further alleges that Jinro America's solicitation of orders for Jinro Products from distributors within the Territory was intended to wrongfully induce and did induce said distributors to breach and/or terminate their relationship with JSA." (*Id*. ¶ 10.) Given the liberal pleading standard and Rule 8(f)'s admonition that "[a]ll pleadings shall be so constructed as to do substantial justice," the Court finds that Plaintiff's amended complaint sufficiently alleges the existence of contractual relationships to its distributors.[2]

With respect to JSA's business expectancy, the amended complaint states, "By accepting orders for Jinro Products from distributors within the Territory, Jinro America wrongfully diverted sales and profits from JSA with the intent to destroy JSA's business." (Am. Compl. ¶ 10.) JAI's motion argued that because Jinro Limited ceased to fill JSA's orders for Jinro products at around the same time JAI allegedly interfered with JSA's relationships with its distributors, JSA could not have had any business expectancy with those distributors. In addition, JAI argues that JSA's factual assertion that it had enough inventory to last through the end of February 2005 should be ignored as outside the pleadings.

As a preliminary matter, the Court finds that JSA's allegation, as quoted, and taken in context

---

[2] The Court notes that JAI's own Sales Manager declared that "[i]t was JAI that established the majority of the distribution network in the Territory that JS America later adopted for its own use and now characterizes as its own. It took JAI a minimum of six months to identify, qualify and establish relationships with distributors that comprise that network." (Kang Decl. ¶ 4; Dkt. No. 25-1.) Given this assertion, JAI would be hard pressed to show that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.

ORDER – 4

with the other factual allegations regarding JSA's relationships to its distributors, is sufficient to plead the existence of a business expectancy for the purposes of Rule 12 (b)(6). The allegations in the complaint that JSA was the sole importer of Jinro products to the Territory and that it had relationships with distributors there clearly lead to an inference that JSA had a business expectancy with respect to those distributors. This alone is enough for the Court to conclude that JSA has sufficiently pled the existence of a business expectancy.

JAI is correct that the Court cannot take JSA's claims regarding its inventory into consideration in determining whether the complaint adequately pleads the existence of a business expectancy. However, JSA's assertion about its inventory was offered to rebut JAI's attempt to show that JSA had no sales and profits that could have been interfered with, contrary to the allegation in the complaint. JAI does not dispute that JSA had this inventory. Therefore, the Court finds that JAI has failed to show that JSA's allegation regarding its sales and profits lacks a factual basis. Accordingly, the Court finds that JSA's allegation of business expectancy is sufficient to withstand Defendant's 12(b)(6) motion.

Finally, both California and Washington law require that a claim for tortious interference plead the existence of "interference . . . wrongful by some measure beyond the interference itself." *Newton Ins. Agency & Brokerage v. Caledonian Ins. Group, Inc.*, 52 P.3d 30, 34 (Wash. Ct. App. 2002) (citing *Pleas v. City of Seattle*, 774 P.2d 1158, 1163 (Wash. 1989)). *See also Visto Corp. v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1064, 1066 (N.D. Cal. 2005). In the case at bar, the amended complaint alleges wrongful inducement of breach and wrongful diversion of sales, but fails to allege facts to support the legal conclusion that such inducement and such diversion were "wrongful." Without any factual predicate to support its allegation that Defendant's conduct was wrongful independent of the fact of the alleged interference, the Court must find that the allegation is insufficient to withstand Defendant's motion to dismiss. *Anderson v. Clow*, 89 F.3d 1399, 1403 (9th Cir. 1996) (stating "[c]onclusory allegations of law . . . are insufficient to defeat a motion to dismiss for failure to state a claim").

Accordingly, the Court must dismiss Plaintiff's amended complaint for failure to state a claim

ORDER – 5

upon which relief may be granted.  However, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the Court will allow Plaintiff an opportunity to amend its complaint to cure the defect.

  *B.*  *Stay*

> A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.

*Levya v. Certified Grocers of Calif., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979).  Here, although the Korean action and this action are not parallel, the issues to be resolved in the Korean action appear to have some bearing upon the case at bar.

  The parties are generally agreed that the Korean action will determine whether the import agreement between Jinro Limited and JSA should remain in effect.  (*See* Pl.'s Opp'n at 9 (characterizing the Korean action as one re: rescission of the contract); Def.'s Reply at 5 (characterizing the question as whether the agreement is null and void).)  Although it is not obvious at first blush what relevance the agreement between Jinro Limited and JSA has to JSA's tortious interference claim against JAI (regarding JSA's relationship with its distributors), the papers filed in the context of this motion make it clear that JSA intends to make some argument tying JAI to Jinro Limited.  First, the Court notes that JAI is a subsidiary of Jinro Limited.  (Kang Decl. ¶ 1.)  Second, JSA asserts that "Jinro Limited has refused shipments of Jinro products to JSA while it is assisting its United States subsidiary, JAI, in its efforts to destroy JSA's established distribution network."  Thus, it is clear that JSA's theory of the case involves some sort of allegation that JAI and Jinro Limited were acting in concert.  For these reasons, the Court finds that the Seoul court's ultimate decision with respect to the enforceability of the import agreement may very well have a significant impact on the case at bar.  Moreover, Defendant has shown to the Court's satisfaction that the Korean action will proceed relatively expeditiously and will not introduce

ORDER – 6

substantial or prejudicial delay into the instant proceedings.[3]  Therefore, the Court concludes that it is in the best interest of efficiency and fairness to wait for the conclusion of the Korean action.  Accordingly, this action shall be STAYED during the pendency of the Korean action against JSA.

IV.   CONCLUSION

In accordance with the foregoing, Defendant's motion is GRANTED.  This action shall be STAYED during the pendency of the Korean action against JSA.  The action shall be removed from the Court's active caseload.  The status conference set for June 14, 2005, is hereby STRICKEN.

The parties are directed to keep the Court apprised of the status of the Korean action and to notify the Court once the Korean action has concluded.  Plaintiff is directed to file an amended complaint within ten (10) days after the stay is lifted.

SO ORDERED this 10th day of June, 2005.

UNITED STATES DISTRICT JUDGE

---

[3] The parties filed a flurry of motions and requests (Dkt. Nos. 49, 51, and 52) regarding declarations testifying to the progress of the Korean proceedings.  The Court hereby rules as follows: Plaintiff's motion to strike the Auerbach Declaration (Dkt. No. 49) is GRANTED; Defendant's motion to file the Kum Declaration (Dkt. No. 51) is GRANTED; Plaintiff's request to file the Park Declaration (Dkt. No. 52) is GRANTED.  The Court considers only those portions of the Kum and Park Declarations agreeing upon the following facts: (1) on May 13, 2005, the Seoul Central District Court conducted a hearing in the Korean proceeding (Park Decl. ¶ 2; Kum Decl. ¶ 2); (2) an attorney representing JSA was not allowed to appear in that hearing (Park Decl. ¶ 2; Kum Decl. ¶ 3); (3) the Seoul Court set another hearing in the matter for June 10, 2005 (Park Dec. ¶ 3; Kum Decl. ¶ 4); and (4) the Seoul Court intends the June 10 hearing to be the final hearing in that matter (Park Dec. ¶ 3; Kum Decl. ¶ 4).

ORDER – 7